William H. HERMSMEYER and Mae R. Hermsmeyer, Individually and d/b/a Du-Al Laundromat and Dry Cleaners, et al., Plaintiffs,

v.

A.L.D., INC., a Delaware corporation, Westinghouse Electric Corporation, a Pennsylvania corporation, Leonard E. Adams and James Conners, Defendants.

Civ. A. No. 8121.

United States District Court
D. Colorado.

Sept. 14, 1964.

Vernon K. Sessions and James J. Johnston, Denver, Colo., for plaintiffs.

Davis, Graham & Stubbs, Thomas S. Nichols, Denver, Colo., for Westinghouse Electric Corp.

Rothgerber, Appel & Powers, William P. Johnson, Denver, Colo., for A.L.D., Inc.

DOYLE, District Judge.

This matter is before the Court on a motion of defendants for summary judgment as against the plaintiffs Tweedy, and the plaintiffs Kunkel, Richardson, Dorsey, and Mr. Coin-Op Company.

In general, the basis for the motion is that these plaintiffs filed bankruptcy and failed to schedule the particular claims which are here asserted. It is the theory of defendants that since the claims of these plaintiffs arose prior to their respective bankruptcies, the claims vested in the Trustee in Bankruptcy by operation of law and thereby these plaintiffs were divested of any right which they had in the fraud and breach of contract claims. The argument is that the trustee would be the real party in interest; that the plaintiffs have lost any rights which they may have had.

The particular facts as they relate to the several plaintiffs are somewhat different:

The plaintiffs Tweedy filed their petitions on December 26, 1962, and later amended them. A trustee was appointed January 18, 1963, and bankruptcy proceedings were terminated and the plain-

tiffs discharged on August 30, 1963. This present litigation was started before the termination of bankruptcy proceedings, on July 3, 1963.

On the other hand, the plaintiffs Kunkel, Richardson and Dorsey, doing business as Mr. Coin-Op, show that the individuals Kunkel, Richardson and Dorsey did not file bankruptcy petitions. Mr. Coin-Op Company, a corporation, filed such a petition on September 20, 1962. A trustee was appointed on October 19, 1962, and the bankruptcy was terminated on April 20, 1964.

Section 70 sub. a of the Bankruptcy Act (11 U.S.C. § 110, sub. a(6)) provides that the trustee of the estate of a bankrupt, on his appointment and qualification, shall be vested by operation of law with the title of the bankrupt on the date of the filing of the petition initiating proceedings under this Act to all of the following kinds of property, wherever located. One of the listed kinds of property is "rights of action arising upon contracts."

The case relied upon by defendants as showing that the present claims vested in the trustee, is a decision of the Supreme Court in First National Bank of Jacksboro v. Lasater, 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408. Here the plaintiff had borrowed money from the defendant and had executed a promissory note which was later paid. Subsequently, plaintiff filed a petition in bankruptcy following which a trustee was appointed. Plaintiff failed to list his claim against the defendant bank in his schedules and finally he was discharged and the estate was closed. Subsequent to his discharge he brought suit against the defendant bank alleging usury and seeking a penal sum. The Supreme Court held that the usury claim passed to the trustee in bankruptcy under Section 70 of the Act—the Supreme Court concluded that the right of action having once passed by operation of law to the trustee was re-transferred to the bankrupt on the termination of the bankruptcy proceedings.

The Court recognized that the trustee in bankruptcy is not bound to accept property of every kind and character and that he may elect not to accept it, and if he elects not to, the bankrupt may assert title to it. The Court pointed out, however, that the doctrine applies only when the trustee knows of the existence of the property so as to make an intelligent election; that where property is not scheduled it could not be said that the trustee had such knowledge.

■ To show abandonment of the claims by the trustee or to raise an issue of fact with respect to it, the Tweedys rely on a letter written by the trustee to their attorney, dated March 26, 1963, in which he refers to the transaction involving the Tweedys and A.L.D., Inc., pertaining to certain laundromat equipment. In his letter the trustee states: "I am this date making inquiry as to the disposition of this property. If satisfactory information is furnished, we will avoid the 21(a) examination; otherwise, we may have to call on your clients to attend the 21(a) examination."

From this letter it is argued that the trustee had knowledge of the present claims and did not choose to assert title to them. With this we can not agree. The letter refers to certain laundromat equipment and its disposition. There is no mention whatsoever of any claims which the Tweedys might have had against the present defendants sounding in fraud or breach of contract. Thus, it cannot be said that the Tweedys gave the trustee notice or that the trustee was shown to have had such knowledge and chose to waive the rights. Thus, it cannot be said that the rights reverted to the Tweedys once the bankruptcy was completed.

■ It is also the contention of plaintiffs that the defendants are not proper parties to raise the defense; that the trustee is the real party in interest. We can not agree with this contention either. Since right to sue goes to the essential merits of the claim it is certainly proper for defendants to contend that the plaintiffs do not have title to the claims which they are asserting. The Lasater case,

supra, shows that a third party may avail himself of the defense in question.

■ We turn now to the motion as it relates to the claims of Dorsey, Kunkel, Richardson, and Mr. Coin-Op Company.

It is to be noted that affidavits have been filed on behalf of Gene Dorsey, Alvin M. Kunkel and Neil A. Richardson. These are virtually identical. They show that equipment was purchased from A.L.D. Inc. and Westinghouse Electric Corporation, and was installed at three locations in and around Denver; that one of the stores opened June 27, 1961, and the two other stores were opened on September 9, 1961. Trade name affidavits were filed in the respective counties in which the businesses were being operated, but no partnership documents were ever executed. The affidavits assert that the action is brought on behalf of each of the individuals and by Mr. Coin-Op, the partnership which preceded the corporation. It is said that Mr. Coin-Op Company was incorporated in the State of Colorado on November 15, 1961. Plaintiffs also point out that there is no evidence disclosing transfer of the property of the partnership, that no bills of sale, deeds or other similar evidences exist. From this it is argued that the property was not actually transferred. It is conceded, however, that stock was issued in the corporation to these various individuals in exchange for their property interest in the businesses. Mr. Coin-Op Company filed bankruptcy. The bankruptcy petition listed all of the assets in question. It did not, of course, list the claims which are now in question. In view of these admitted facts there can be no reasonable doubt concerning the transfer of the property to Mr. Coin-Op Company.

As to the assertion by the plaintiffs that the corporation is not bringing the suit and therefore the bankruptcy is not pertinent, the simple answer is that the grant of summary judgment as to the corporation is not prejudicial to the plaintiffs. It cannot be concluded, however, that in view of the other evidence, which is undisputed, the property of the part-nership was not transferred to the corporation simply because of the fact that no documents were executed. Too much water has flowed under the bridge to permit this to be raised now.

It must be concluded that plaintiffs did in fact and in law transfer all their property in the coin-op businesses to the corporation and thus any damages which accrued subsequent to this time would necessarily belong to the trustee in bankruptcy who would hold the title for the benefit of the creditors. The plaintiffs can not claim these damages. On the other hand, insofar as the individual plaintiffs can demonstrate that damage accrued to them prior to the transfer to the corporation, the motion for summary judgment as to them must be denied.

■ A question which has occurred to the Court is whether Section 70, sub. a(6) of the Bankruptcy Act applies to a tort action in fraud and deceit. This section declares that the bankrupt's trustee succeeds to all of the rights of action that the bankrupt may have arising *from contract*. Apparently, the defendants rely on this clause alone. It should be noted, however, that the section also provides that the trustee is vested with title to all rights of action arising from "the unlawful taking or detention of or injury to" the bankrupt's property. Research discloses that the courts have held a misrepresentation or deceit action to be within the scope of this latter clause of the statute. See 4 Collier, 1258, 1259.

There are a number of cases which deal with the particular subject. In Tamm v. Ford Motor Co., 80 F.2d 723 (8th Cir.), the Court concluded that fraud was a claim which passed to the trustee. A similar conclusion was reached by the District Court for the Northern District of New York in In Re Harper, 175 F. 412, and also in In Re Gay, 182 F. 260 (District Court, D. Mass.). See also Henderson v. Binkley Coal Co., 74 F.2d 567 (7th Cir.).

The conclusion that a fraud case as well as an action for breach of contract would be transferred to the trustee by operation of law is entirely logical and, therefore,

we can conclude that Section 70, sub. a(6) includes a tort action in fraud even though the statutory language is somewhat unsatisfactory.

It is finally concluded that the motion for summary judgment should be, and it is hereby granted as to the plaintiffs Tweedy and as to Mr. Coin-Op Company. The motion for summary judgment as to plaintiffs Dorsey, Kunkel, and Richardson, as individuals, should be, and is hereby denied.

It is so ordered.